637 So.2d 801 (1994)
STATE of Louisiana
v.
Richard LAY.
No. 93 KA 1063.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
*803 William R. Campbell, Jr., New Orleans, Reginald T. Badeaux, III, Covington, for plaintiff-appellee State of La.
Peter J. Garcia, Covington, for defendant-appellant Richard Lay.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
The defendant, Richard Lay, was charged by bill of information with possession of a stolen thing valued at $100.00 or more, but less than $500.00, in violation of LSA-R.S. 14:69. He pled not guilty and, after a jury trial, was found guilty as charged. The defendant received a sentence of two years at hard labor, with credit for time served.[1] He has appealed, alleging the following seven assignments of error:
1. The trial court erred in refusing to allow the defendant to waive counsel and conduct his own defense at trial.

*804 2. The State failed to prove each element of the offense beyond a reasonable doubt.
3. The trial court erred in denying the defendant's motion for a new trial.
4. The trial court erred in denying the defendant's motion in arrest of judgment.
5. The trial court erred in denying the defendant's motion for post verdict judgment of acquittal.
6. The trial court erred in not ordering a mistrial or admonishing the prosecutor regarding comments made during closing argument.
7. The trial court erred in imposing an excessive sentence.
Assignment of error number six was not briefed on appeal and, therefore, is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
On the morning of February 19, 1991, the defendant entered Dunaway's Mini Market in Slidell, Louisiana. He approached Randal Dunaway in the rear of the store and attempted to cash a Louisiana income tax refund check in the amount of $205.00. When asked for his identification, the defendant responded that he did not have any identification. Randal Dunaway then informed the defendant that he would have to bring the check to the front of the store to get it approved before it could be cashed. The defendant then walked to the front of the store and presented the check to Jane Dunaway. Ms. Dunaway refused to cash the check since she knew the defendant's name was Richard Lay and the name of the payee on the check was Terrell.[2] She informed the defendant that Mr. Terrell would have to bring the check into the store himself with some form of identification. At this point, the defendant did not say anything; he simply left the store with the check. The Terrells were later contacted about this incident, which led to the defendant's arrest.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant contends that the trial court erred in refusing to allow the defendant to waive counsel and conduct his own defense at trial.
The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a person brought to trial must be afforded the right to assistance of counsel before he can be validly convicted and punished by imprisonment. The Sixth Amendment further grants to an accused the right of self-representation. State v. Carpenter, 390 So.2d 1296, 1298 (La.1980); State v. Dupre, 500 So.2d 873, 876-877 (La.App. 1st Cir.1986), writ denied, 505 So.2d 55 (La. 1987). In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court raised to constitutional level the right of a state criminal defendant to represent himself. Because an accused managing his own defense "relinquishes... many of the traditional benefits associated with the right to counsel," he "must `knowingly and intelligently' forego those relinquished benefits" in order to represent himself. Faretta v. California, 422 U.S. at 835, 95 S.Ct. at 2541. Before an accused can choose the right to defend himself, he must make a knowing and intelligent waiver that shows he appreciates the possible consequences of mishandling the core functions that lawyers are more competent to perform. State v. Dupre, 500 So.2d at 878. "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the *805 record will establish that "he knows what he is doing and his choice is made with eyes open."
Faretta v. California, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). Thus, before a trial judge can allow a defendant to represent himself, he must determine whether the defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. State v. Carpenter, 390 So.2d at 1298; State v. Dupre, 500 So.2d at 878.
The bill of information was filed on April 18, 1991. The court minutes indicate that, at his arraignment on the same date, the defendant was represented by an attorney, Keith L. Ward. On May 13, 1991, Mr. Ward represented the defendant in the preliminary examination and some discovery matters. On June 24, 1991, the first day of the trial, the jury was selected. Mr. Ward represented the defendant. However, on June 25, immediately before opening statements to the jury, the defendant informed the court that he wished to speak, whereupon the following colloquy occurred:
MR. LAY:
Your Honor, may I speak?
THE COURT:
No sir. Talk to your attorney.
MR. LAY:
I might elect to
MR. WARD:
Your Honor, again Mr. Lay has expressed his desire to terminate our representation of him in this matter.
THE COURT:
That is denied.
MR. WARD:
Thank you, Your Honor.
MR. LAY:
I have a right to represent myself.
THE COURT:
No, sir.
MR. LAY:
It is your obligation to have a hearing whether or not I am able to represent myself, of the United States Constitution, amendment six.
THE COURT:
You are under an obligation to sit there and be quiet; otherwise, I am going to have you removed from the courtroom or gagged, whichever one you want.
MR. LAY:
I require my due process rights.
For the reasons which follow, we find no error in the trial court's ruling denying the defendant's request to waive counsel and conduct his own defense at the trial, despite the fact that the trial court denied this request without a hearing. As the above procedural history of this case indicates, the defendant was represented by counsel at the outset. There is no indication from the record that he had any type of serious disagreement with counsel until the beginning of the second day of the trial. The Louisiana Supreme Court has held that a criminal defendant who has acquiesced in the representation of counsel throughout pretrial proceedings, who for the first time requests to represent himself the morning of trial under circumstances which indicate that the request was a delaying tactic, and who makes no showing at all of any particular reason for his delay in asserting his right to self-representation, has impliedly waived that right. State v. Hegwood, 345 So.2d 1179, 1182 (La.1977).
For the above reasons, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS TWO, THREE, AND FIVE
In assignment of error number two, the defendant contends that the State failed to prove each element of the offense beyond a reasonable doubt. In assignment of error number three, the defendant contends that the trial court erred in denying his motion for a new trial. In assignment of error number five, the defendant contends that the trial court erred in denying his motion for post verdict judgment of acquittal. These three assignments of error relate to the sufficiency *806 of the evidence and will be addressed together.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
LSA-R.S. 14:69 A provides:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir. 1984).
In his brief to this Court, the defendant does not contest the fact that he possessed the check and attempted to cash it, nor does he dispute its value. However, he argues that the State failed to prove that the check was stolen. We disagree, finding that the State did prove that the check was stolen. Both Mr. and Mrs. Terrell testified that they did not know the defendant and did not give him permission to cash their income tax refund check. Mrs. Terrell further testified that she and her husband did not give anyone permission to cash the check. Mr. Terrell explained that the check was mailed to his former address. He went to that address and spoke with a black female who lived there. She admitted that the check had arrived in the mail a few days earlier. Mr. Terrell testified as follows:
And she said on that Friday that the check had arrived into, came to that home, and it was there and she put it on thesomewhere, she just laid it up, and she told me that she went to Baton Rouge. She had company come in and out of the house. She didn't know where the check was at.
Although Mr. Terrell's testimony about his conversation with this black female who lived at his former address was hearsay, it was admitted without objection at the trial. The defendant contends in his brief that this hearsay testimony "should not be considered competent evidence." However, as a general rule, hearsay evidence to which no objection is lodged constitutes substantive evidence. This rule is inapplicable if the hearsay evidence is the exclusive evidence of the offense or an essential element thereof and is contradicted at the trial by the sworn recantation of the out-of-court declarant. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). Because there was no recantation in this matter, Mr. Terrell's hearsay testimony established that the check was received in the mail at his previous address a few days prior to the instant offense and that the black female who received the check did not know what had happened to it. Finally, Ms. Dunaway testified that an unknown individual had unsuccessfully attempted to cash the same check in her store one or two days before the defendant attempted to cash it. Therefore, contrary to the defendant's argument, the State definitely established that the Terrell's income tax refund check was stolen.
The defendant also argues that the State failed to prove that he knew or should have known that the check was stolen. The *807 defendant testified that he received this check as payment for a gambling debt and that he believed the man who gave him the check was Felix Terrell. According to the defendant, the man who gave him the check stated that he had attempted to cash it earlier, but Ms. Dunaway refused to cash it. The defendant indicated that he took the check because he believed that Ms. Dunaway might cash it since she knew him. However, when Ms. Dunaway refused to cash the check, the defendant gave it back to this unknown man.
When a case involves circumstantial evidence, and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Morrison, 582 So.2d 295, 303 (La.App. 1st Cir. 1991). The defendant's testimony presented a hypothesis of innocence, i.e., that he received the check in payment for a gambling debt from a man whom he believed to be Mr. Terrell. Therefore, he had no knowledge, and no reason to believe, that the check was stolen. In finding the defendant guilty as charged, the jury obviously rejected this hypothesis of innocence presented by the defendant's own testimony. We find that the jury's rejection of the defendant's testimony was reasonable. Randal Dunaway testified that, when the defendant attempted to cash the check, he asked: "You got your check back already?" The defendant replied: "Yeah, I mailed it off early." Therefore, in an obvious attempt to mislead Randal Dunaway, the defendant clearly implied that he was the payee, Mr. Terrell. However, on cross-examination, the defendant denied speaking with Randal Dunaway when he attempted to cash the check. Nevertheless, as the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of illegal possession of a stolen thing valued at $100.00 or more, but less than $500.00.
These assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, the defendant contends that the trial court erred in denying his motion in arrest of judgment.
LSA-C.Cr.P. art. 859(5) provides:
The court shall arrest the judgment only on one or more of the following grounds:
* * * * * *
(5) The verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment;

* * * * * *
The defendant argues that the "guilty" verdict returned by the jury was defective. We disagree. There is no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury. LSA-C.Cr.P. art. 810. In the instant case, the jury verdict stated: "We, the jury find defendant, Richard Lay, Guilty." This verdict was correct in form and responsive to the bill of information, which charged the defendant with illegal possession of a stolen thing valued at $100.00 or more, but less than $500.00. See LSA-C.Cr.P. art. 811. Since this verdict clearly conveyed the intention of the jury, the trial court did not err in accepting a verdict of *808 "guilty." See State v. Sylvas, 558 So.2d 1192, 1201 (La.App. 1st Cir.1990); State v. Louis, 496 So.2d 563, 567 (La.App. 1st Cir.1986).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER SEVEN
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1 (prior to its amendment by Act 22, Sec. 1, of 1991).[3] The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La. App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
The presentence investigation report indicated that the defendant was classified as a second felony offender, with felony convictions for forgery and theft, as well as numerous misdemeanor convictions. At the original sentencing hearing, before imposing sentence, the trial court reviewed the facts of the instant offense and the defendant's lengthy criminal record. The court rejected the possibility of probation after noting the defendant's recidivism. The court concluded that the defendant was in need of correctional treatment and stated that a lesser sentence would deprecate the seriousness of the offense. Our review of the original sentencing transcript indicates that the trial court adequately complied with the Article 894.1 guidelines.
For his conviction of illegal possession of a stolen thing valued at $100 or more, but less than $500, the defendant was exposed to a maximum sentence of two years at hard labor and a maximum fine of $2,000.00. See LSA-R.S. 14:69 B(2). The defendant received the maximum sentence of two years at hard labor, but no fine was imposed.
This court has stated that the maximum sentence may be imposed only in cases involving the most serious offenses and the worst offenders. State v. Easley, 432 So.2d 910, 914 (La.App. 1st Cir.1983). We cannot conclude that the instant offense was the most serious type of illegal possession of stolen things valued at $100 or more, but less than $500. However, we note that the defendant's lengthy criminal record dates back to 1977. Certainly he is the worst type of offender, since he has committed so many separate felonies and misdemeanors.
Considering the circumstances of the offense, the defendant's criminal record, and the reasons for sentencing given by the trial court, we conclude that the instant sentence is not excessive.
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant was originally sentenced on August 26, 1991, immediately after the trial court denied his motion for new trial and motion in arrest of judgment. The trial court did not wait the required 24 hours before imposing sentence, nor did the defendant waive this delay. See LSA-C.Cr.P. art. 873. However, any error committed by the trial court in failing to observe this 24 hour waiting period was rendered moot when the court vacated the original sentence and resentenced the defendant on November 4, 1991.
[2] The evidence is unclear as to whether or not this income tax refund check was made payable to Felix Terrell alone or to Mr. and Mrs. Terrell. The check was not introduced into evidence at the trial. Apparently, it was never recovered after this incident.
[3] The defendant was sentenced on November 4, 1991, prior to the effective date of the new sentencing guidelines (January 1, 1992).